United States Court of Appeals for the 4th circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, Ms. Reese, it will be a pleasure to hear from you. Good morning, and may it please the Court, my name is Morgan Reese, and I'm here this morning on behalf of Mr. Holman. I would like to reserve three minutes for rebuttal. This case presents three issues for the Court's consideration, but the most egregious of which concerns the District Court's application of a guideline, specifically the application of a base offense level enhancement for an offense involving a firearm capable of accepting a large capacity magazine. The Court should reverse and remand with instructions not to apply that base offense level for two reasons. First, applying the Kaiser v. Wilkie analysis that this Court has adopted, the plain text of the guidelines is clear and unambiguous. It should not apply here, but even if the Court determines that it is ambiguous, deference to the commentary is unnecessary, because the commentary falls outside the zone of ambiguity. But secondly, what is abundantly— Let me just mention that both the Third and the Ninth Circuit have found that the term large was indeed ambiguous. Yes, Your Honor, that's true. In both Trumbull and McIntosh, those courts in the Ninth and Third Circuits did indeed address this question of ambiguity. We don't have to get to that. Let's do some bullet counting. There are 31 bullets the prosecution says. Probation says 32. Two 15-round magazines. Listen to this scenario. You put one bullet in the chamber. You pack it with a 15-round magazine. That's 16 bullets. You got another magazine. That's 15. That adds up to 31 bullets. So how do we get to an extended magazine? Your Honor, yes, indeed. That is the problem here. The Court has identified the issue. The PSR on page 162 of the Joint Appendix has the only information contained in this magazine that was found here. And the problem I think Your Honor has identified is that this information is very vague and unclear as to how the magazines were filled, where the ammunition was located, and whether or not, as Your Honor has pointed out— Was there a finding with respect to the number of rounds? Your Honor, the only thing that is located in the PSR is what Judge Floyd has identified, which is that the magazines and firearm contained a total of 32 rounds of 9-millimeter ammunition. All right. Well, if it contained 32 rounds, then one of those rounds must be 15. But you got to get this right first. The prosecution had 31 bullets. That's in the statement upon which the plea was taken. Then you get to PSR, and then all of a sudden the bullet count goes from 31 to 32. Now, he pled guilty on a set of facts that there were 31 bullets. So that's the problem in this case. Yes, Judge Floyd, you're correct. In the PSR on page 77, which is the factual basis that the Court has identified, it does very clearly say 31 rounds of 9-millimeter ammunition. It's covered from the magazine. Excuse me, counsel. Yes, Your Honor. I thought that the PSR had made a finding that there was a 32 rounds finding in the PSR. Yes, Judge Wilkinson, that is correct. All right. Then the question is, was there an objection raised to the PSR about that particular finding? No, Your Honor. There was no objection that was raised here. So the district court adopted the PSR without objection? That is correct, Your Honor. So that 32-round finding is part of an unobjected to PSR. And I don't recall, even in a briefing up here, that issue about the 32, about the finding, was raised. Was it raised in the briefs? Your Honor, we noted what the facts were in our brief. And we noted that the application of this guideline would not be appropriate here. No, no, no. That's too general. Was there a... The problem is we're not only up here on a single plain error question. We're on a double plain error. We're on the fact that no objection was made to the PSR initially. And then the question was raised, was not raised with any degree of specificity in the briefing. So we have a double PSR to start off with. And if there's anything that's crucial to federal sentencing, it is that if there's no objection to the PSR, the district court can adopt it. And that would seem to me to be pretty much conclusive. And the reason is that the whole idea of objections to the PSR is crucial to sentencing. We can't do attorney's work for them. And ultimately, it redounds to the detriment of defendants if attorneys are given the leeway to say, well, you don't need to object because the Court of Appeals will pull it out for you. And that's not good. It's unfair to district courts and it undermines the adversary process when we have an unobjected to PSR that makes a finding and leaves the defendant with the burden of somehow saying the finding was wrong, which I'm not sure has been carried. But that's initially a problem, is that the need to object and the importance of PSRs and the allowance given to district courts to adopt them, that's a problem for you, is it not? I understand the court's point. And it is well taken at this point in time. We did not object, that's correct, at the district court level. This question wasn't presented for the district court to analyze. However, this court has the ability to consider what we're arguing now. Ms. Reese, might I just add, I think I can reconcile this for you, if we just slow down for a second. I think the statement of facts only spoke, if you look at the statement of facts, it speaks only of the magazine. It says the magazine in the car and the magazine in the firearm total 31. But then the PSR, as Judge Wilkinson said, which was not objected to, says 32 because it says the magazines and the firearm. So the reason, as a humble district judge sitting here, you do what you need, and what was needed for the statement of facts, for the enhancement, was just speaking in terms of the magazines. The PSR, though, added the bullet that's in the firearm. So the difference between, they can be read together, they're not inconsistent, in my view, it's just the statement of facts spoke only in terms of magazines, while the PSR says magazines and firearm. And if that's true, doesn't that give us enough bullets? Because that means at least one of the magazines had 16. Isn't that correct? Your Honor, I don't disagree with that court's analysis, but I think that part of the problem with where we are at this stage is that we're now interpreting and viewing evidence that really isn't very clear. I do appreciate the court's point. I'm going to read you the statement of facts. It said, It doesn't mention a firearm. But the PSR, then, speaks about the magazine and the firearm. The difference, simply, between the statement of facts and the PSR is the and firearm, which is the additional bullet. That leaves you with the 31 between the two magazines, so one of the magazines had at least 16, which means the enhancement applies. Isn't that correct? Your Honor, I agree with your math. The only part of that analysis that I would raise a question to is whether or not the magazine in the car actually could suffice for this enhancement. Because if we turn to the language of this enhancement with the base offense level, and assuming, for the sake of argument, that this court then looks at the commentary, this court then has to make an analysis about whether or not it was in close proximity to that. Aren't you making an argument? The points you're making aren't those very same points. This whole argument should be had before the district court. Should it not? This is not the right venue to be having this whole discussion. This should have been held before the district court. I might add that the 15 figure, which we're dealing with here, seems to me to be very generous to defendants, because a lot of the states have much stricter requirements for their enhancements. A number of them have a requirement of 10 rounds. Others are, it seems to me, much harder on defendants than this particular figure was. But this particular figure is very important, because the number of rounds that a magazine is able to carry bears directly on the ability of people to undertake mass shootings and mass executions. And so society has an interest, and the Sentencing Commission has an interest in putting some lid on the amount that somebody who might be contemplating a mass shooting can have. It's a very important societal interest in not expanding this 15 figure or playing fast and loose with it. Ms. Reese, let me ask you this question. We're talking about an extended magazine, not bullets. So if you go to the commentary or you stick with the statute, what evidence in the record is that there is an extended magazine? It doesn't matter whether 31 or 32 bullets. The question is, is there evidence in the record that there is an extended magazine? And is there? Your Honor, our position would be no. I would say that based on the PSR, the only information that we have is this singular statement that the magazines and firearm contained a total round of 32 rounds of 9 millimeter ammunition to the court's point. And I would say, Your Honor, if we're going to go back a little bit to even how we're conducting this analysis, whether or not we apply and we determine that it is ambiguous, the question then becomes, are we applying the guideline as it has been written, which basically says a semi-automatic firearm that's capable of accepting a large capacity magazine? So I think in the scenario where we're talking about here, we have a firearm under Judge Novak's analysis that has 15 rounds in the magazine and then one in the chamber. So is that really a firearm that is capable of accepting a large capacity magazine? There's no analysis about that. I think you missed my math there. I'm sorry. I must not have been clear. I think my math is 15 plus 16 equals 31 of the two magazines with one in the firearm. And I think that is the discrepancy between the two, the statement of facts. So if 16 means, if there's 16 rounds in one, that, of course, means it is acceptable. And while we're talking about rounds, what the guideline says is, is it accepting of at least 15? There's been no, at least I'm not aware of any testimony that was put forth that talked about, you could have held 20 or 30. We're only counting the rounds because if you got 16 rounds, you necessarily, it's capable of 15, right? So... Respectfully, Your Honor, if we're going to look at the commentary, the commentary doesn't say 15. It says more than 15. It's more than 15. Am I not right about that? You are correct, Your Honor. And I think the point that I was making is, really, if we're talking about the firearm here, that's what the guideline is asking this court, any court, to analyze. It says it's about the nature of the firearm and the capability of what it can accept. So if that's the standard, looking at the PSR, there's just simply not enough information for a court to make that finding. I would say, Your Honors, regardless of whether or not we have ambiguity in the first part of this analysis, under the terms of the guideline... You say part of the firearm, but part of what this enhancement is getting at is magazines that are not necessarily inserted into the firearm, but are proximate to it. And if they're more than 15 rounds, or 15 or more rounds proximate to the firearm, that's part of what the enhancement is getting at. It's not just whether it's inserted into the firearm or part of the firearm. But a lot of it is also proximity. Because that underscores the ability of someone to undertake a mass shooting. Yes, certainly, Your Honor, in the commentary part B of the second application note, there is that proximity language. But if this court is going to apply the Kaiser v. Wilkie analysis, determine that the guideline is ambiguous, and then look to the commentary, part of that analysis is whether or not the commentary fits with the guideline itself. And if we're looking specifically at part B, part B expands the scope of the guideline. Because the guideline text itself has to do with the gun. It has to do with the capabilities of the gun. Part B can be read to say that this base defense level enhancement could apply if there's just a magazine that has more than 15 rounds in it nearby. That is far beyond the scope. I think, Judge Wilkinson, to your point, which is that the intent of this guideline was to target and punish those people who have firearms that could impose serious damage and pose a danger to people. The way this commentary is written under part B, it would expand it so that someone could be punished for this if just a magazine that didn't even fit the firearm was found nearby. And it fit that more than 15 language. Well, let me just say, you know, we're up here on plain error. And one of the points I often make is Orlano has four points. And unfortunately, that last point, I refer to it as the forgotten fourth prong of Orlano. And you still have to take a look at the sentencing proceeding as a whole in court to conclude that there's plain error and whether it brings the judicial system into disrepute. And I'm not sure what there was about the way Judge Osteen conducted the sentencing proceeding that would ever bring the district court, the judicial system, in repute. He took into account that there was obviously no defense, put on a self-defense rationale, which is just absurd. But he took into account that there was a crime of violence in the criminal history. He imposed a within guidelines sentence. He took it conscientiously. He was never informed of the nature of the objection. And I think we have an obligation to look at the sentencing proceeding as a whole and under the fourth prong of Orlano ask whether it brought the judicial system into disrepute. Not only did it not bring the judicial system in repute, Judge Osteen's approach to the sentencing function brought the And there's no way we can just ignore that. I see that I'm out of time. May I answer Your Honor's question and briefly conclude? Can you answer when I get, when you reserve some time for rebuttal, haven't you? Yes, Your Honor. I'm happy to answer the question at any time the court would allow. Well, why don't you answer the question now and we also, we won't take off time from your rebuttal because I want you to have plenty of time to make your argument. I appreciate the court. Thank you. Your Honor, I understand the court's point about the fourth point and excuse me, fourth element of Orlano. But I think the fundamental analysis here is that we as a system, the judiciary, all have an obligation to ensure that the application of the guidelines are interpreted appropriately and applied consistently according to the facts. But all I'm saying is that that seems to me to collapse the fourth, to collapse the fourth prong of Orlano into one of the first three and the fourth prong of Orlano is supposed to be separate and it's supposed to protect the plain error analysis and the obligation to give district courts a obligation of attorneys to argue for their clients on specific terms and the respect for district courts to give them notice of questions that they have about the PSR. But at the end of the day, when the sun sets, we have to utilize that fourth prong of Orlano and ask whether there was anything about this proceeding that brought the judicial system into disrepute. I read the dialogue of what Judge Osteen said and everything. It was a well-conducted sentencing proceeding and he was free to adopt the findings of the PSR and the defendant bears the burden of overturning those findings, which I don't think he's carried. And then you get into the fourth prong of Orlano. Is there something that is just wrong and disreputable of how what went on below and that is put in there for a reason. It's not just superfluous. But I want you to have some time for rebuttal and if any of my colleagues have further questions of you, stay there and we'll let my colleagues ask those questions. Judge Floyd, do you have some questions? No, sir. There's no... I'm all good. Thank you, sir. Thank you, Ms. Rees. And you have some time for rebuttal. Thank you, Your Honor. Mr. Painter. Thank you. Good morning, Your Honors. May it please the Court, Carla Painter on behalf of the United States for the Middle District of North Carolina. This Court should affirm the District Court's sentence because there was no plain error or even any error in the application of the large capacity magazine enhancement. I just want to clear up a few things that go to the plain error analysis. The defense agrees. She stated that today that the magazines and the firearm contained a total of 32 rounds. That's mentioned on page 13 of the opening brief. And of course, we've already talked about what's noted in the PSR. I'd like to draw the Court's attention to paragraph 6 where it says the magazine located in the defendant's vehicle matched the firearm located next to the vodka bottle. And of course, we've already connected one of those magazines that was in the firearm to the defendant. And so we also connect the magazine in the vehicle to that firearm. So that's important because it demonstrates that we have, at the very least, one magazine involved in this offense that was capable of accepting more than 15 rounds. And that is the definition that the Commission has provided to us in determining when that large capacity enhancement should apply. So the thing that gives us, I think, an entry into the commentary is simply the ambiguity that the two other circuits have found. And the ambiguity there has to do, I think, with how you interpret the whole phrase, large. Is that not correct? Okay. Yes, Your Honor. But just to go back to the plain error, recall that in order to even apply that analysis at the appellate level, plain error requires either, one, the explicit language of a statute or rule resolves the question, or two, at the time of the appellate consideration, the settled law of the Supreme Court or this Court established that an error has occurred. Here we don't have that. We don't have a specific statute or specific case law saying that this was plain error. And to your point, Judge Wilkinson, we know that the District Court didn't even have an opportunity to review this in the first place because the defense had no objections to the PSR. Again, we also didn't have an opportunity or the need to further develop the factual record because there was no notice of any objection that this enhancement would apply. So it would be, to your point, Your Honor, unfair for this Court to establish plain error on those facts in the state of the law. As you noted, the two circuits, the Ninth and the Third, the majority in both of those circuits stated that the term large capacity magazine is ambiguous, and therefore we looked at the Kaiser factors. Both of those majorities determined those Kaiser factors were met. I do want to point out that the defense relies heavily on the concurrences in both Trumbull and McIntosh, but note that those concurrences, even though they said there's no ambiguity here, could not tell us definitively what the number should be. Judge Bay and Trumbull suggested that if we're going to rely on what we know Congress's intent to be, it should be more than ten rounds. So even assuming that, this qualifies here. Now the concurrence in McIntosh relied heavily on the capable of accepting language from the guideline itself, and he said we do not even need to decide what the capable capacity of the magazine in question was here, because we know that firearm, that Ruger AR-556, could hold a magazine of up to 50 or 100 rounds. So I think the concurrences in those decisions are telling in that they can't give us an unambiguous statement, but they can tell us, even referring back to the language of the guidelines, the definition provided would still apply for a large capacity magazine. As to the reasonableness prong, we know that Congress itself told us in the assault weapons ban that more than ten essentially means large capacity. As your honors have noted, most of the states that had a reason to define what large capacity meant went with that same standard, more than ten. We know three additional circuits have used the definition provided by the commission here, more than fifteen. Only one state has said it should be more than seventeen, but as we can see, the commission's approach in adopting the guideline definition, it noted inconsistent applications and what's qualified as a large capacity magazine. The point is this figure of fifteen is a very generous one to defendants because there are a great many states, a good many states, that would say, no, you can't have more than ten. So, the standard here is not draconian or harsh or anything else. It's very generous as far as the defense is concerned. Isn't that correct? You're correct, your honor. The definition only further narrows when the large capacity magazine would apply. If this court were to adopt the stance taken by the concurrence in the Trumbull case, it would essentially apply that enhancement to any time there is a firearm capable of accepting a magazine that can hold more than ten rounds. So, the definition actually functions to cabin the application of the enhancement and it is within the zone of ambiguity as we know based on the various magazine sizes that are readily used today. So, the first factor under Kaiser is do we have a genuinely ambiguous term here and large capacity magazine is genuinely ambiguous. The next goes to the reasonableness or the zone of ambiguity. Here, essentially the courts are telling us to ask is this agency responsible for helping define something in this area of the law? Here we have the sentencing commission that was specifically tasked by Congress to come up with some objective characters to help district courts find a guideline range that reflected the aggravating and mitigating circumstances of the offense. That's exactly what the commission has done here. The commission has given us numeric values. We know that because there's enhancements for when someone possesses anywhere from three to seven firearms or we have drug weight calculations and mandatory minimums. We have loss amounts and the financial crimes avenues. So, we know that this is something the commission is capable of doing and something it's been instructed to do. So, this falls within the reasonableness and the zone of ambiguity. We've also talked about the character and context revealing the interpretation is entitled to controlling weight. Again, we know that to be true because this is exactly what the commission is supposed to be doing. Ms. Painter, do you often, when you get these kind of cases, do you put the magazine in evidence in a plea or a trial? Well, Your Honor, we would if there was an objection or if there was some way to interpret the facts such that... I mean, excuse me, I mean in the proof of your case. Would you put the magazine in and say, this is a high capacity magazine? If it were contested, Your Honor, but here the facts that were not contested made it clear that that enhancement should apply. Had this been raised at the lower court level, that's certainly something we could have explored. We could have had the agent testify as to the capacity of the magazines. As you seem to note, we don't know the actual capacity of these magazines. It could have been 17, it could have been 30, but we just simply didn't have the opportunity or the reason to develop that record. But on the undisputed facts, we know that this is a large capacity magazine under the definition. So at the plea stage, not the sentencing stage, what did the statement of facts say as to the basis of the plea about the magazine? You're correct, Your Honor, and I noted that as well. What did it say? 31 rounds for the two magazines, Your Honor. And is there anything in that statement of facts that indicates that this is a high capacity magazine? Well, Your Honor, for the factual basis, we're establishing the elements for the offense. I understand that. That's what he's pleading guilty to. That is what, upon which he's going to get sentenced, isn't it? It is, Your Honor, but again, we need to lay forth the foundation for the elements of the offense here. That's knowing possession of a firearm by a felon. Of course, when we get to the PSR stage, that's when he would have an opportunity to object to facts which would form the basis for the enhancements. Of course, that did not happen here. And did the PSR, other than do a bullet count, did it say that it was a high capacity magazine? It applied the enhancement for a large capacity magazine. Did it say that it was a high capacity magazine? Your Honor, in the guidelines calculations, I'm looking at paragraph 14. It said, since the offense involved a semi-automatic firearm capable of accepting a large capacity magazine, a base offense level of 22 applies. So, yes. Right. And there was no objection to the PSR. That's correct, Your Honor. And again, we would submit that that's why this court should decide this on a plain error basis. It doesn't need to get into the merits and discuss those Kaiser factors because it simply wasn't raised below. I mean, the PSR made an unobjected to finding. Did it not? Did the enhancement apply? That's correct, Your Honor. And there were no objections. You have a finding. You have a finding that's on point. You have a finding that this is a large capacity magazine. You have a finding that this particular enhancement applies. There is no objection to the finding. The district court adopts the PSR. This is really routine stuff. It's very straightforward. And also, when you take a step back and look at how this sentencing proceeding went forward, it is a well done sentencing. The district court was simply not sloppy about it. District court applied a within guidelines sentence. District court went over the self-defense proposal and said no driving around at 2 o'clock when you're not sober. The self-defense position is just not at all credible. District court says, look, you've got some crimes of violence in your background. That's what the district court is supposed to do. And the district court did it. And so the question, again, under the plain error doctrine, you go through these particular steps, which we have, and you go through the finding that the PSR made. That was unobjected to. And then you look at the sentence, whether you look at the particulars or whether you look at the sentencing proceeding as a whole. The district court did this right, and I wish that every sentencing proceeding exhibited the kind of care and meticulousness that characterized this one. I agree, Your Honor. You touched on something. I wanted to wrap up with the defense claims that the court did not consider his argument of possessing the firearm in self-defense. That's simply not true. A quote from the sentencing transcript from the judge says, quote, to pick up a gun with an extended magazine and then have it in the car when you're driving drunk and tell me you have it for protection because of this work incident, that's not a very compelling story. So the court did consider the defense's arguments and considered those in weighing both the guideline range and the 3553A factors and it came up with a guideline sentence right around the middle of the guideline, 66 months for a 57 to 71 guideline range. That's presumptively reasonable and the record here only further supports the district court's approach and the district court knows we rely and we defer to the district courts for their fact-finding and for their analysis at the trial court sentencing level. Accordingly, we ask that you affirm if there are no additional questions, I'm comfortable resting on a brief. Judge Floyd, do you have any additional questions? No, sir. Judge Novak, do you have any additional questions? None for me, thank you. Ms. Reese, you have some rebuttal time. Happy to hear from you. Thank you, Your Honor. I have three points to make on rebuttal. First, we concluded my argument with a discussion about the fourth point of the Alano, the fourth factor of the Alano analysis. That factor goes to the fairness and the integrity of the judiciary and judicial proceedings. Here, that standard is met because the government did not meet their burden. They could have read the PSR to read that it did not rise to that level of explaining sufficiently whether or not there was an actual large-capacity magazine here and whether or not this gun could accept it. Why is that the government's burden? Isn't it your burden if you have an objection to the PSR? If you had an objection to this finding that the PSR made about the applicability of the enhancement? The government did not do this. The government did not do that. Your statement shifted the burden of proof. Your Honor, it is the government's burden of proof by preponderance of the evidence to meet that burden for every enhancement application at sentencing. The government did not meet that burden here. They could have easily identified that in that factual basis, it said 31. In this PSR, it said 32. There is no explicit finding in that PSR that this firearm was capable of accepting a large-capacity magazine. The government very easily could have made sure that that language was modified in order to clearly support this. What obligation does this place on defense counsel? Is it defense counsel just to sit there and wait for the government to unearth all the errors that may be in the PSR? Where does this leave the adversary process? Your Honor, it is always the government's burden. If we're going to let the government slide by on language that is vague and not clear, then that will always allow the government to not rise to the level of their obligation to uphold their standard and their burden in these cases. It is the government's burden. It is not the defendant's burden to disprove. It is the government's burden to prove. And it is their obligation to determine when that evidence rises to the level and when it does not. It's the government's burden if there's an error and it's a question of the harmlessness of it, that's clearly the government's burden to prove harmlessness. But when we're dealing with plain error, that's your burden. You have to show that you have to carry and have the burden of showing that the PSR was in some case, in some ways, incorrect. And I haven't I've been listening carefully, but I don't think that you've carried that burden. Your Honor, respectfully, we have carried that burden. Because when the court reads this PSR, Your Honor, I see I am out of time. May I briefly continue answering the court's question and conclude? You go ahead, but I don't want to make it if you could make it brief, I would be most appreciative. Yes, Your Honor, I appreciate the court. Your Honor, simply put here, there is just no evidence that this firearm could accept an extended magazine. If we go with the court's analysis that there was 15 inside the magazine that the gun had, one in the chamber, that is not an extended magazine because it's not more than 15. Then we're at stage where we're analyzing the magazine in the car. That takes us to prong E of the commentary and it's our position that that commentary language expands the scope of the guideline, and that's impermissible. All right, we I thank the court for its time this morning. We thank you. Judge Floyd, do you have any further questions? Yes. Judge Novak. Thank you, sir. All right. Ms. Reese, I see that you're court-appointed, and I want to express the sincere appreciation for the vigor and the conscientious manner in which you've argued your case. We rely on court-appointed counsel to do a really good job, and you've done that, and we thank you. Thank you, Your Honor. All right, we will move right into our second case. Court is adjourned.
judges: J. Harvie Wilkinson III, Henry F. Floyd, David J. Novak